IN RE APPROPRIATION OF EASEMENT FOR HIGHWAY PURPOSES.

(No. 727—Decided January 31, 1954.)

*Mr. A. B. Mabee* and *Mr. C. H. Henkel,* for appellants.

*Mr. C. William O'Neill,* attorney general, and *Mr. Hugh E. Kirkwood, Jr.,* for appellee.

McClintock, J.   This is an appeal on questions of law from a judgment of the Court of Common Pleas of Richland County. The facts briefly are as follows:

L. C. Mabee and Doris E. Mabee, who are the appellants in this action, were the owners of certain real estate in Springfield Township, Richland County, Ohio, and the Shiloh Savings Bank Company, Shiloh, Ohio, also named in the proceeding, had a mortgage upon said premises.   The Director of Highways of the state of Ohio desired to acquire an easement in a portion of the premises and accordingly entered on the journal of the Department of Highways a finding that it was necessary to appropriate such property, and on January 2, 1952, filed a copy of such resolution and finding in the Common Pleas Court of Richland County, in accordance with Section 1178-37, General Code. Notice was served on the owners.   The owners were not satisfied with the amount as fixed by the director for the easement, and within ten days after the service of the notice filed their written petition setting forth their intention to appeal from the amount so fixed by the director, as required by Section 1178-38, General Code, and in accordance with said section did file a bond in the amount as fixed by the court.

The cause was submitted to a regular jury panel and a verdict was rendered in favor of the appellants herein in the sum of $350 as compensation for the land taken, and $630.50 as special damage, the total sum being $980.50.   Judgment was entered on the verdict by the court below, and the journal entry of the judgment in part reads as follows:

"On April 22, 1953, A. B. Mabee the attorney of record for the appellants, the owners of the land taken, requested the court to especially assign this case and to submit same to the regular jury panel in the approaching May term of court.   On April 25, 1953, the court communicated A. B. Mabee's request for such assignment to the Attorney General and the Director of Highways and obtained the consent and approval of Mr.

Mabee's request upon the condition that this case be the first case submitted to said jury; on the same date attorney A. B. Mabee assented to this condition imposed by the Attorney General and thereupon the cause was assigned for trial for May 18, 1953.

"On May 18 and May 19, 1953, this cause came on duly to be heard for the determination of compensation of land taken and assessment of damages to the residue. Thereupon a jury was duly impanelled and sworn, being composed of members of the regular jury panel for the May term of this court; and such issues as to compensation and damages were duly submitted to said jury. Thereupon, after due deliberation said jury duly returned a verdict for three hundred fifty dollars ($350) as compensation for the land taken, six hundred thirty dollars and fifty cents ($630.50) as damages to the residue, such verdict thus being for the total sum of nine hundred eighty dollars and fifty cents ($980.50).

"During the trial counsel stipulated and agreed upon the date of May 24, 1952, as the time of the taking of the land and that the said land owners are entitled to interest at the legal rate of six (6%) per cent per annum from said date until the date of May 19, 1953, the date of the verdict. The amount of the verdict being nine hundred eighty dollars and fifty cents ($980.50), it is therefore ordered, adjudged and decreed that the said landowners are entitled to interest at the rate of six (6) per cent per annum on the said sum of nine hundred eighty dollars and fifty cents ($980.50) in the sum of fifty eight dollars and nineteen cents ($58.19).

"It is therefore, ordered, adjudged and decreed that the said proceedings be and the same are hereby approved and confirmed by the court and that the Director of Highways of the state of Ohio shall deposit in this court a sum sufficient, to wit, nine hundred sixty four dollars and sixty nine cents ($964.69) which when added to the original deposit herein, to wit, seventy four dollars ($74) will equal the said sum of nine hundred eighty dollars and fifty cents ($980.50) with interest of fifty eight dollars and nineteen cents ($58.19) which shall be paid by the clerk to the landowners herein, as their interests may appear in an order for distribution made by the court."

Motion for new trial was filed by the appellants and overruled by the court below and thereafter appellants appealed to this court on questions of law, and for their assignments of error allege:

"1. Irregularities in the proceedings of the court, by reason of which the appellants were prevented from having a fair trial:

"(a) That the procedure to impanel a jury and the submission of the matter was contrary to and in violation of the provisions of the statutes of the state of Ohio, especially Section 1178-38 of the General Code of Ohio;

"(b) The property of the owners-appellants was taken without due process of law under the Constitution of the United States of America and the Constitution of the state of Ohio;

"2. Error in the court's general charge to the jury;

"3. Grossly inadequate damages—it appearing from the facts proved that the jury must have omitted to take into consideration some of the elements of damage properly involved in the owners-appellants' claim:

"(a) The jury failed to consider all uses for which the land might be suitable, including the most valuable uses to which it could reasonably and practically be adapted;

"(b) The jury failed to give consideration to any allowances for damages to the residue after the appropriation of the easement;

"(c) The jury did not consider the limited access to the highway by the owners-appellants;

"4. The verdict and judgment are contrary to law;

"5. The overruling of the motion of the owners-appellants for a new trial."

In a consideration of assignments of error Nos. 1, 4 and 5, we find from Section 1178-38, General Code, the necessary procedural steps where property is appropriated by the state Director of Highways. Said section, in part, provides first that if the owner of property appropriated by the director is not satisfied with the amount as fixed by the director, the property owner may within ten days after the service of notice file a written petition in duplicate in the court, setting forth his in-

tention to appeal from the amount so fixed by the director. The court shall thereupon fix the amount of bond to be given by the appellant and cause an entry thereof to be made on the journal of the court, and the appellant within five days after the fixing of the amount of the bond shall file a bond in the amount so fixed, and upon bond being filed and approved, the court shall fix a day, not exceeding five days thereafter, for the hearing of all preliminary questions and motions and for the examination of papers, and on the day so fixed all preliminary motions and questions arising upon said appeal shall be heard and determined, and if the court finds the proceedings are irregular or the appeal is not perfected according to law, he shall dismiss the same, and if the court finds that said appeal has been properly perfected and that the proceedings are substantially regular, the court shall forthwith transfer to the Director of Highways the money deposited in the court for the use and benefit of the appellant, and the court shall fix a day, not more than twenty days after it has determined that said appeal has been properly perfected, for the trial of the case by jury.

The commissioners of jurors shall forthwith be notified by the court and cause to be drawn from the jury wheel, in the manner provided by law, the names of sixteen persons as jurymen. Additional names may be drawn as required. The court shall deliver the venire to the sheriff who will serve it within five days thereafter and make return of such service. On the trial the court shall take the list of jurymen, as certified by the clerk, and call the names in the order they appear. The court below did not follow the procedural requirements in this action. He did not fix a date within twenty days after the appeal had been perfected for the trial of the case by a jury. Jurors were not drawn within the time or manner provided by law and the court did not issue a venire commanding them to appear, and no date or hour had been set for trial, and the jury that heard this case was not summoned or qualified as provided in Section 1178-38, General Code, but the same was assigned for trial to a regular jury on May 18, 1953, and was tried on May 18 and May 19, 1953.

It is our opinion that it was necessary to comply with the conditions precedent, as specified in Section 1178-38, before the

court and jury had jurisdiction of the subject matter. For authorities in this matter we cite the following:

18 American Jurisprudence, 961, Section 317:

"To the maintenance of condemnation proceedings it is essential that all preliminary steps prescribed by the statute be taken, for such steps are jurisdictional and may not be disregarded."

20 Corpus Juris, 888, Section 315:

"Conditions Precedent—1. In General. The statutes commonly prescribe various conditions precedent to the right to exercise the power of eminent domain, and these must be complied with or the proceedings will be void."

29 Corpus Juris Secundum, 1150, Section 222:

"In General. Failure to comply with statutory provisions imposing conditions precedent to the acquisition of property by proceedings to condemn or appropriate usually renders the proceedings invalid."

*Martin* v. *City of Columbus*, 101 Ohio St., 1, 127 N. E., 411, the syllabus of which is as follows:

"1. An action brought by a municipality to condemn private property under the Constitution and laws of Ohio is a proceeding *in rem.*

"2. In such proceeding, there are no formal pleadings or definite issues, which admit of affirmation upon one side and denial upon the other, and hence the doctrine of 'burden of proof' has no application.

"3. The jury acts merely as an appraising or assessing board, determining the fair market value of the property from all the evidence submitted."

Also, on page 6:

"The plaintiff, relying upon the right of eminent domain, is obliged to set the machinery of the law in operation in conformity to the constitutional requirement and the statutes pursuant thereto, in order to secure the title and possession of the property. The property owner need not even appear. The Constitution and the laws protect him as to 'full compensation or just compensation for the value of the property taken.' "

Also, on page 7:

"Those who seek to dispossess others of their constitution-

al right of private property, under the provisions of the extraordinary power of eminent domain, should have cast upon them the burden of proving to the satisfaction of the court and jury that they have performed, or are willing to perform, their full constitutional and statutory duty in the premises touching such full or just compensation. Such provision is special and in derogation not only of the common law but also of the general provision of the Constitution, and therefore should be strictly construed.''

That case was distinguished in *Tennessee Gas Transmission Co.* v. *Wolfe,* 159 Ohio St., 391, 112 N. E. (2d), 376, the syllabus of which is as follows:

''In an action for the condemnation of land, the owner has the burden of proving claimed special damage to residue, such as that to underlying minerals. (*Martin* v. *City of Columbus,* 101 Ohio St., 1, distinguished.)''

Otherwise the case follows the one just cited.

Also, 6 Nichols on Eminent Domain, 18, Section 24.2:

''It is well settled that, in such a case, if there are in effect general provisions of statute prescribing the procedure for taking land for public use and the method of ascertaining the damages, such provisions are by implication made a part of the law granting the authority to exercise eminent domain in a particular case, and the method of procedure authorized by the Legislature in such case is thus made clear, so that there can be no question in respect to the jurisdiction of the tribunal by which the power is sought to be exercised.''

At page 28, Section 24.2[3]:

''When land is taken or damaged in the course of the construction of a public improvement by authority of a valid statute and in compliance with all the essential requirements of law, and the statute which authorizes the taking provides a process which may be instituted by the owner of the land for determining and recovering compensation or damages, the statutory remedy is exclusive and the owner cannot enforce the payment of compensation or damages in any other form of action.''

At page 46, Section 24.6:

''Conditions precedent to the exercise of the power of eminent domain which are set forth in statutes investing cer-

tain public and private entities with such power, or in the procedure in connection therewith, must be complied with to give validity to the subsequent proceedings.''

At page 82, Section 25.1[1]:

''In the states in which condemnation proceedings are considered judicial, a party seeking to take land by eminent domain must first satisfy the court that it has been authorized by the Legislature to exercise the power, that the statute purporting to grant such authority is constitutional, that the conditions exist under which it was provided that the authority might be exercised, and that the condemnor has complied with the requirements of the statute. All of these objections are also open to an owner of land taken by eminent domain in a state in which condemnation proceedings are considered administrative and not judicial, and he is constitutionally entitled to a hearing thereon before a judicial tribunal; but he must raise such objections in certiorari or other appropriate proceedings instituted by himself, rather than in defending proceedings instituted by the condemnor.''

At page 109, Section 26.111:

''The allegations of the petition must show compliance with the statute under which the proceeding is brought. All jurisdictional facts must be set forth.''

At page 147, Section 26.121[2]:

''It is well settled that an owner of land sought to be taken, who has not received the notice of the proceedings required by statute or upon whom process has not been served in the manner provided by law, by appearing before the court or board with which the petition was filed, waives the defect in the service, and the tribunal in question acquires jurisdiction over him and his property. If, however, the tribunal has no jurisdiction of the subject matter, the owner merely by appearing and answering does not waive his right to object to the jurisdiction even in a collateral proceeding.''

At page 257, Section 26.72:

''*A fortiori*, when the condemnation of land is effected by judicial proceedings, in which the owner may appear and insist upon the observance of every substantial requirement of law before his title is divested, once a final judgment of condemna-

tion has been entered, such judgment cannot be attacked collaterally in any other form of action, except for lack of jurisdiction, fraud, or where such judgment is otherwise void.''

At page 260, Section 26.72:

''The jurisdiction of courts over eminent domain proceedings is wholly statutory, and no court has jurisdiction in such matters except and in so far as it is given jurisdiction by the provisions of statute. If a statute gives a certain court authority to lay out highways upon proceedings originating with a petition signed by ten adult residents, it may well be argued that such court has no jurisdiction to act on a petition signed by nine adults and one minor. If it has authority to act after the lapse of a certain specified number of days from the return day, it has no jurisdiction to act earlier. There is almost no irregularity in procedure so trivial that it cannot be plausibly argued that it is fatal to the jurisdiction.''

It is claimed by the appellee that since the appellants did not make objection to this panel by a challenge to the array of jurors, they waived this defect. Section 11419-50, General Code, on challenge of array reads as follows:

''A challenge to the array may be made and the whole array set aside by the court, when the jury, grand or petit, was not selected, drawn or summoned, or when the officer who executed the venire, did not proceed as prescribed by law. But no challenge to the array shall be made or the whole array set aside by the court, by reason of the misnomer of a juror or jurors; but on challenge, a juror or jurors may be set aside by reason of a misnomer in his or their names; but such challenge shall only be made before the jury is impaneled and sworn, and no indictment shall be quashed or verdict set aside for any such irregularity or misnomer if the jurors who formed the same possessed the requisite qualification to act as jurors.''

This section of the Code clearly has no application in the case under consideration. The section clearly states in its own language that it relates to cases where the array was not properly drawn, selected or summoned, because of some irregularity in drawing the name of a juror or a misnomer of a juror.

Jurisdiction has been defined as the legal right to hear and determine a cause. Clearly, this regular jury panel was not

authorized by law to hear and determine this cause. It is true that counsel and the parties agreed to have the matter heard before the regular jury panel. However, neither the parties nor counsel by their acts could confer jurisdiction.

The conditions precedent required to be performed in an appropriation case are part of the law of such case, and these conditions are made for the benefit and protection of both the property owner and the political subdivision making the appropriation. The appellants were entitled to have the question of compensation and damages for the taking of their property submitted to a special jury and the right to have the question submitted to and determined by a jury especially chosen, as provided by law for that purpose. Any other procedure in violation of the conditions precedent and the requirement for a special jury would deprive the appellants of due process and would result in the taking of their property in violation of their constitutional rights.

For the reasons herein stated, assignments of error Nos. 1, 4 and 5 are well taken, and the court below committed prejudicial error in not compelling the parties and counsel to follow the procedure laid down in Section 1178-38, General Code.

As to assignments of error Nos. 2 and 3, we find in the record as to the court's charge the following:

"Now it has been admitted that one side of damages requested and upon which evidence has been introduced must find its way into your verdict, that is the item of $630.50. It is admitted by the state of Ohio that these property owners are entitled to that much damage as a result of the pipe line which they were required to install."

And the court said further:

"And as damages to the residue of the owners' land—a blank space—now in that blank you will insert what you determine to be the damages to the residue, keeping in mind that it must be at least $630.50—and that goes in on that line."

For special damage the sum of $630.50 was allowed. It has no relation to damages to the residue and should not have been so connected in the charge of the court as a part of the damages to the residue. It was misleading and erroneous on the part of the court in its charge. There was substantial evi-

dence in the record as to the damages to the residue, and we are of the opinion that the amount of damages allowed in the court below was inadequate and was manifestly against the weight of the evidence.

For these reasons assignments of error Nos. 2 and 3 are well taken, and the judgment of the Court of Common Pleas is reversed and the cause is remanded to that court for further proceedings according to law.

*Judgment reversed.*

Putnam, P. J., concurs.

Montgomery, J., concurring in the judgment. I concur in the reversal of the judgment. However, I am unwilling to approve Judge McClintock's position in view of the record before us.

The situation of which appellants now complain was produced by their attorney of record, who, it was stated in court, is the father of the chief appellant. Because the result obtained by the decision of the jury did not meet the expectation of those who invoked the action, they should not be heard when they now complain.

However, the award was grossly inadequate. It was inadequate for the land taken. Nothing was allowed as damages to the remainder. Certainly an agreed amount for the restoration of a destroyed water line cannot be construed as damage to the land.